# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANDREA R., as parent and next friend of H.R., a minor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:19-cv-00752-SGC ) |
| DIOCESE OF BIRMINGHAM IN ALABAMA, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Andrea R., proceeding as parent and next friend of H.R., her minor child, commenced this action by filing a complaint on May 17, 2019. (Doc. 1). She names as defendants the Diocese of Birmingham in Alabama (the "Diocese") and Sacred Heart of Jesus Catholic School ("Sacred Heart") and claims the defendants (1) discriminated against H.R. on the basis of his disabilities, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and (2) breached its contract with her by failing to abide by certain provisions of the Sacred Heart 2018-2019 Student Handbook (the "Handbook") regarding peer harassment. (*Id.*). The defendants assert a breach-of-contract counterclaim against

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

the plaintiff for failing to pay H.R.'s tuition for the 2018-2019 school year. (Doc. 19).

Pending before the undersigned is the defendants' motion for summary judgment on the claims asserted against it. (Doc. 31). By an order dated October 29, 2020, the undersigned denied the plaintiff's request for additional time to conduct discovery, brought pursuant to Rule 56(d) of the *Federal Rules of Civil Procedure*, and directed the plaintiff to file a response to the defendants' motion for summary judgment within twenty-one (21) calendar days. (Doc. 38). The plaintiff has failed to file a response to the defendants' motion within the time prescribed. For the reasons discussed below, the defendants' motion is due to be granted; the undersigned declines to exercise supplemental jurisdiction over the defendants' state law counterclaim; and this action is due to be dismissed with prejudice.

Also pending before the undersigned is the defendants' motion requesting a ruling on their unopposed motion for summary judgment. (Doc. 39). Based on the entry of this memorandum opinion and the accompanying final judgment, that motion is due to be denied as moot.

**I. Material Facts**[2]

Sacred Heart is a private, parochial school in Anniston, Alabama. (Doc. 33 at p. 3). The Diocese supervises Sacred Heart to the extent it has responsibility for ensuring the teachings of Catholicism are an integral part of the school's curriculum. (Doc. 1 at ¶ 5; Doc. 19 at ¶ 5). H.R. was enrolled as a student at Sacred Heart during the 2018-2019 school year. (Doc. 33 at pp. 3-4). The basis for the plaintiff's Section 504 and breach-of-contract claims are her allegations the defendants did not provide support services for H.R.'s disabilities, which include major depression, anxiety, and attention deficit hyperactivity disorder, and permitted students to harass H.R. physically, verbally, and through social media. (*See generally* Doc. 1).

Dr. Jeremiah Russell, the Principal of Sacred Heart during the relevant period, attests Sacred Heart presently does not receive funds from the federal government and did not receive federal funds during the 2018-2019 school year. (Doc. 33 at pp. 3-4). Margaret Dubose, the Director of Catholic Schools for the Catholic Diocese

---

[2] Given the plaintiff did not respond to the defendants' motion summary judgment, the facts identified by the defendants as undisputed are deemed admitted. *See Moore v. Jimmy Dean / Sara Lee Foods, Inc.*, 2007 WL 9711997, at *1 (N.D. Ala. May 11, 2007) (holding that by failing to respond to defendant's motion for summary judgment, *pro se* plaintiff was deemed to have admitted each of defendant's allegations of undisputed fact). Nonetheless, the undersigned has confirmed these facts are supported by the evidence of record, viewing that evidence in the light most favorable to the plaintiff, as the non-movant, and giving the plaintiff the benefit of reasonable inferences. *See id.* (doing the same); *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d 1099, 1101-02 (11th Cir. 2004) (holding district court cannot grant summary judgment by default but, rather, must consider whether motion is supported by evidence and otherwise meritorious).

of Birmingham in Alabama, confirms Dr. Russell's representation and clarifies Diocese schools such as Sacred Heart do receive certain benefits from Local Education Agencies ("LEAs") – for example, teachers hired and paid by LEAs, loaned technology, funds for teachers to attend professional development programs – which in turn receive money from the State of Alabama, which in turn receives funds from the federal government. (Doc. 37-1 at ¶¶ 4-5). The defendants argue the plaintiff's Section 504 claim fails for these reasons. (Doc. 33 at pp. 6-8; Doc. 37 at pp. 4-6).

Moreover, the defendants argue the plaintiff's breach-of-contract claim fails for lack of consideration. (*Id.* at pp. 8-10). To the extent the Handbook creates an obligation on the part of the defendants with respect to harassment of a student by his or her peers, it also informs students and their families that they have a contractual obligation to pay tuition and fees. (*Id.* at p. 4). Upon H.R.'s enrollment at Sacred Heart, both the plaintiff and H.R. signed an acknowledgment they had read and agreed to the contents of the Handbook. (*Id.*). Nonetheless, the plaintiff failed to make any 2018-2019 tuition payments. (*Id.* at p. 5). The plaintiff withdrew H.R. from Sacred Heart on or about April 2, 2019. (Doc. 1 at ¶ 18).

**II. Standard of Review**

Under Rule 56 of the *Federal Rules of Civil Procedure*, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida*,

363 F.3d at 1101. A district court does this by ensuring the motion is supported by evidentiary materials and that the standard for granting summary judgment is otherwise satisfied. *Id.* at 1101-02.

## III. Discussion

### A. Plaintiff's Section 504 Claim

Section 504 prohibits discrimination against a disabled individual, including a student, "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also* 45 C.F.R. § 84.39 (imposing certain requirements on "recipients" that provide private elementary or secondary education to handicapped persons); 45 C.F.R. § 84.3(f) (defining "recipient" as "any public or private agency, institution, organization, or other entity . . . to which Federal financial assistance is extended directly or through another recipient"). To prevail on a claim brought pursuant to Section 504, a plaintiff must show he or she "(1) had an actual or perceived disability, (2) qualified for participation in the program, (3) was discriminated against because of his or her disability, and (4) the relevant program is receiving federal financial assistance." *Moore v. Chilton County Bd. of Educ.*, 936 F. Supp. 2d 1300, 1313 (M.D. Ala. 2013); *see also Gore v. GTE South, Inc.*, 917 F. Supp. 1564, 1574 (M.D. Ala. 1996) (holding that to prevail under Section 504, plaintiff would be required to show "not only that she is a handicapped individual who is qualified to be a telephone operator and excluded from said job because of

6

her handicap but also that the program or activity receives federal financial assistance.").

While liability under Section 504 extends to a program or activity that receives federal financial assistance directly or indirectly, it does not extend to an entity that merely has a beneficial relationship with a program or activity that receives federal financial assistance. *U.S. Dep't of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 604-07 (1986). For example, in *Paralyzed Veterans*, the Court held commercial airlines did not receive federal financial assistance that would subject them to Section 504 but, rather, only benefitted from the use of federal financial assistance received by airport operators (e.g., to the extent the commercial airlines used runways built by airport operators with cash received from the federal government). *Id.* at 606-07; *see also DeFrank v. Army Fleet Support, L.L.C.*, 2009 WL 737113, at *4 (M.D. Ala. Mar. 20, 2009) (granting summary judgment in defendant's favor on plaintiff's Section 504 claim where there was no evidence provision of EEOC training to defendant functioned as federal financial assistance that defendant received, rather than assistance from which it merely benefitted). The Court in *Paralyzed Veterans* reasoned Congress limited Section 504 coverage to recipients of federal financial assistance because recipients, as opposed to mere beneficiaries, are in a position to accept or reject the statutory obligations in deciding whether to receive the funds. 477 U.S. at 604-05.

The undisputed facts establish Sacred Heart presently does not receive financial assistance directly from the federal government and did not receive financial assistance directly from the federal government during the 2018-2019 school year, when H.R. was enrolled as a student at the school.  Moreover, the receipt by Sacred Heart of benefits from LEAs, which in turn receive money from the State of Alabama, which in turn receives funds from the federal government, does not present a genuine dispute for trial regarding the fourth element of the plaintiff's Section 504 claim in the absence of additional evidence suggesting Sacred Heart would be anything more than an incidental beneficiary of the "economic ripple effects" of federal financial assistance with respect to the benefits.  *See Paralyzed Veterans*, 477 U.S. at 607 (noting Court has recognized most federal assistance has "economic ripple effects" and rejected argument those indirect economic benefits can trigger statutory coverage) (internal quotation marks).  To reiterate, the plaintiff does not argue to the contrary.

Accordingly, the plaintiff is unable to prove an essential element of her Section 504 claim, which therefore fails as a matter of law.  *See Gore*, 917 F. Supp. at 1574 (holding plaintiff's Section 504 claim failed because GTE Telephone Operations, a subsidiary of GTE Corporation, with which plaintiff was employed as a telephone operator, was not a program or activity that received federal financial assistance).

### B. Plaintiff's Breach-of-Contract Claim

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). Moreover, under Alabama law, "a failure of consideration is the failure to perform a promise contained in [an] agreement," and "a total failure of consideration is used as an excuse for nonperformance of a contract." *Lemaster v. Dutton*, 694 So. 2d 1360, 1366 (Ala. Civ. App. 1996). Assuming for the sake of argument the Handbook constitutes a valid contract between the plaintiff and defendants and that the defendants failed to perform under the contract by permitting H.R.'s peers to harass him, the undisputed evidence establishes the plaintiff failed to perform her concomitant obligation under the contract insofar as she made no tuition payments for the school year during which H.R. was enrolled at Sacred Heart. Accordingly, under *Reynolds* and *Lemaster*, the plaintiff's breach-of-contract claims also fails as a matter of law.

### C. Defendants' Breach-of-Contract Counterclaim

Subsection (a) of § 1367 permits a federal district court to exercise supplemental jurisdiction over state law claims that are so related to claims in an action over which it has original jurisdiction as to "form part of the same case or controversy under Article III of the United States Constitution." § 1367(a).

However, subsection (c)(3) of § 1367 permits a federal district court to decline the exercise of supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). When determining whether to decline the exercise of supplemental jurisdiction under § 1367(c)(3), a court should consider judicial economy, convenience, fairness to litigants, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988). Comity suggests Alabama courts should be allowed to decide claims arising under Alabama law, such as the defendants' breach-of-contract counterclaim. *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law."). Moreover, the Eleventh Circuit has encouraged district courts to dismiss remaining state law claims when federal claims, such as the plaintiff's Section 504 claim, have been dismissed prior to trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). For these reasons, the undersigned declines to exercise supplemental jurisdiction over the defendants' state law counterclaim.

**IV. Conclusion**

For the foregoing reasons, (1) the defendants' motion for summary judgment (Doc. 31) is due to be **GRANTED**; (2) the defendants' motion requesting a ruling on their unopposed motion for summary judgment (Doc. 39) is due to be **DENIED** as **MOOT**; (3) the undersigned declines to exercise supplemental jurisdiction over

the defendants' state law counterclaim; and (4) this action is due to be **DISMISSED WITH PREJUDICE**.  A separate order will be entered.

    **DONE** this 17th day of December, 2020.

*Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE